

**IT IS ORDERED as set forth below:**

**Date:  March 6, 2017**

_____

**W. Homer Drake**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# NEWNAN DIVISION

| | | |
|---|---|---|
| **IN THE MATTER OF:** | : | **CASE NUMBERS** |
| | : | |
| JAMES P. VANBROCKLIN, | : | BANKRUPTCY CASE |
| Debtor. | : | NO. 15-11761-WHD |
| _____ | : | |
| | : | |
| JENNIFER DYCH, RAY CARON, | : | ADVERSARY PROCEEDING |
| Plaintiffs, | : | NO. 15-1059-WHD |
| | : | |
| v. | : | |
| | : | IN PROCEEDINGS UNDER |
| JAMES P. VANBROCKLIN, | : | CHAPTER 7 OF THE |
| Defendant. | : | BANKRUPTCY CODE |

# O R D E R

Before the Court are the Motion to Dismiss Plaintiff's Complaint for Failure

to Prosecute and the Motion for Judgment on the Pleadings filed by James P.

VanBrocklin (hereinafter the "Debtor") in the above-styled adversary proceeding. These motions arise in connection with the complaint of Jennifer Dych and Ray Caron (hereinafter the "Plaintiffs") objecting to the Debtor's receipt of a discharge. This is a core proceeding, *see* 28 U.S.C. § 157(b)(2)(J), over which this Court has subject matter jurisdiction, *see* 28 U.S.C. §§ 157(a), 1334.

## Motion to Dismiss for Failure to Prosecute

The Debtor's first motion seeks dismissal of the Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 41, which allows a court to dismiss a proceeding due to a plaintiff's failure to prosecute. *See* Fed. R. Civ. P. 41(b); *see also* Fed. R. Bankr. P. 7041 (incorporating Rule 41 into adversary proceedings). In this District, there is also a local rule governing dismissal for failure to prosecute. *See* BLR 7041-1. The local rule allows dismissal if "[a] plaintiff or movant willfully fails or refuses to make an adversary proceeding or contested matter ready or refuses to cause same to be made ready for placement on the trial calendar." BLR 7041-1(a)(1). Dismissal for want of prosecution is an extreme sanction that should only be imposed in situations in which it is necessary. *See Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337-39 (11th Cir. 2005); *Justice v. United States*, 6 F.3d 1474, 1482 n.15 (11th Cir. 1993).

The Debtor claims that dismissal for failure to prosecute is necessary because he believes that the Plaintiffs have engaged in "a pattern of inaction." The Debtor points to the fact that the Plaintiffs filed their complaint on November 16, 2015, and since that time have only filed one motion (a motion to strike, which this Court granted in part and denied in part on March 7, 2016). Additionally, the Debtor asserts that the Plaintiffs have not sought any discovery from him.

While the Court acknowledges that the docket in this proceeding is not teeming with activity, there is not sufficient cause to dismiss this proceeding for failure to prosecute. Though the docket does not indicate that the Plaintiffs have sought discovery from the Debtor, they have clearly engaged in discovery in this proceeding, as shown by the five subpoena notices they have filed. (*See* Doc. Nos. 15-19). In addition, the Plaintiffs complied with this Court's Order of December 20, 2016, directing them to file a status report after a long period of inactivity. (*See* Doc. No. 22; Status Report, Doc. No. 27). In light of these facts, the Court finds that dismissal for want of prosecution is not appropriate at this time.

**Motion for Judgment on the Pleadings**

A. Judgment on the Pleadings Standard

Federal Rule of Civil Procedure 12(c) allows a party to "move for judgment on the pleadings."  Fed. R. Civ. P. 12(c); *see also* Fed. R. Bankr. P. 7012(b) (incorporating Rule 12(b)-(i) into adversary proceedings).  "Judgment on the pleadings…is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts."  *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002); *accord Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998); *Bank of Camilla v. St. Paul Mercury Ins. Co.*, 939 F. Supp. 2d 1299, 1303 (M.D. Ga. 2013). In reviewing a motion for judgment on the pleadings filed by a defendant, a court should treat the factual statements in the complaint as true and make all inferences in favor of the non-moving plaintiff.  *See Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998).

"The standard of review for a motion for judgment on the pleadings 'is almost identical to that used to decide motions to dismiss.'"  *Bank of Camilla*, 939 F. Supp. 2d at 1303 (quoting *Doe v. Bd. of Cnty. Comm'rs*, 815 F. Supp. 1448, 1449 (S.D. Fla. 1992)); *see also Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3rd Cir.

4

1991) ("Rule 12(h)(2) provides that a defense of failure to state a claim upon which relief can be granted may also be made by motion for judgment on the pleadings.   In this situation, we apply the same standards as under Rule 12(b)(6)."). Consequently, the Court's analysis on this motion will focus on whether the Plaintiffs' complaint contains sufficient factual allegations "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (per curiam).   If the Court concludes that the Plaintiffs "would not be entitled to relief under any set of facts that could be proved consistent with the allegations," the Court will dismiss the complaint.   *See Horsley*, 292 F.3d at 700.

With these guiding principles in mind, the Court turns to the allegations in the Plaintiffs' complaint.

B. Background

Accepting the allegations in the Plaintiff's complaint as true, the facts of this proceeding are as follows.   The Debtor and Plaintiff Ray Caron were officers and co-owners of two companies: Axiom Laboratories, LLC (hereinafter "Laboratories"), and Axiom Nutraceuticals, LLC (hereinafter "Nutraceuticals").   In

5

2014, Laboratories acquired the assets of Metaugus, Inc. (hereinafter "Metaugus") by way of a sale conducted as part of Metaugus's Chapter 11 Bankruptcy case. As part of that sale, Laboratories assumed a debt that Metaugus owed to Bank of North Georgia in the approximate amount of $990,000. This debt was secured by substantially all of Laboratories's assets, and the Debtor and Caron both personally guaranteed the debt.

Late in 2014, the Debtor and Caron entered into a separation agreement whereby the Debtor obtained all of the outstanding interest in Laboratories and Nutraceuticals. The agreement provided that both Caron and the Debtor would be liable for certain debts of the two companies. Sometime after this agreement, the Debtor sold significant amounts of Laboratories's assets. Though these assets were subject to Bank of North Georgia's security interest, the proceeds of these sales (hereinafter the "Sale Proceeds") were not turned over to Bank of North Georgia or used to pay any other of Laboratories's debts. Instead, the Debtor converted the Sale Proceeds and other assets of Laboratories (hereinafter the "Converted Assets") to his own use and transferred them to a company called USA Labs Direct, LLC (hereinafter "USA Labs"). USA Labs was established on April 13, 2015, and one Jeffrey Hendricks, MD, is the member and manager.

6

The Plaintiffs filed their complaint initiating this adversary proceeding on November 16, 2015. The Plaintiffs assert that USA Labs was established for the sole purpose of enabling the Debtor to conceal the Sale Proceeds and the Converted Assets from the creditors of Laboratories and Nutraceuticals. The Plaintiffs maintain that the Debtor is in control of USA Labs, and that the Debtor has engaged in a scheme to conceal his interest in USA Labs and his conversion and transfer of the Sale Proceeds and the Converted Assets.

The complaint contains three counts: (I) the Debtor should be denied a discharge pursuant to § 727(a)(2)(A)[1] as the Debtor's transfer of the Sale Proceeds and other assets constituted a transfer of the Debtor's property within one year of the filing of the petition; (II) the Debtor should be denied a discharge pursuant to § 727(a)(4) as the Debtor's failure to disclose his personal receipt and use of the Sale Proceeds and the Converted Assets, his transfer of those assets to USA Labs, and his true interest in USA Labs constituted false oaths or accounts; and (III) the Debtor should be denied a discharge pursuant to § 727(a)(5) as he has failed to explain

---

[1] The complaint contains a citation to § 727(a)(2) generally, but the allegation that the Debtor has transferred *his* property necessarily means that the Plaintiffs are proceeding under paragraph (A), as paragraph (B) concerns transfers of property of the estate after the filing of the petition. *See* 11 U.S.C. § 727(a)(2)(B).

7

satisfactorily the loss or deficiency of the Sale Proceeds and the Converted Assets to meet the Debtor's liabilities.

C. Discussion

In the instant motion, the Debtor asserts that the Plaintiffs have failed to state claims upon which relief can be granted and that he is entitled to judgment on the pleadings as to each of the Plaintiffs' counts.   The Court will address each count in turn.

*Count I: § 727(a)(2)(A)*

Section 727(a)(2) "is intended to prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing or otherwise disposing of assets."   *Gebhardt v. McKeever (In re McKeever)*, 550 B.R. 623, 635 (Bankr. N.D. Ga. 2016) (Hagenau, J.) (quoting 6 COLLIER ON BANKRUPTCY ¶ 727.02[1] (Alan N. Resnik & Henry J. Sommer, eds. 16th ed. Supp. 2013).   The section prohibits a debtor from receiving a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate…has transferred, removed, destroyed, mutilated, or concealed…(A) property of the debtor, within one year before the date of the filing of the petition."   11 U.S.C. § 727(a)(2).   To deny a debtor his discharge under § 727(a)(2), a court must find actual intent, but that intent may be

8

inferred from the circumstances and the debtor's conduct.   *See In re McKeever*, 550 B.R. at 636 ("Actual intent, however, may be inferred from the circumstances surrounding the transfer or concealment."); *Menotte v. Moore (In re Moore)*, 375 B.R. 696, 701 (Bankr. S.D. Fla. 2007) ("Courts should consider a debtor's whole pattern of conduct when determining whether the debtor acted with intent to defraud.").

In support of his motion, the Debtor argues that the Plaintiffs' complaint fails to state a claim under § 727(a)(2)(A) due to three defects: (i) the complaint fails to identify *when* the Debtor transferred the property; (ii) the complaint does not contain sufficient facts to show that the Debtor had an actual intent to defraud; and (iii) the complaint alleges only that the Debtor transferred property of Laboratories, not that the Debtor transferred his own property.   In response, the Plaintiffs assert that they have adequately pleaded all of those elements.

i. The Timing Issue

As stated above, §727(a)(2)(A) applies to situations in which the transfer of the debtor's property occured within one year prior to the filing of the petition.   11 U.S.C. § 727(a)(2)(A).   In the instant case, the Debtor filed his petition on August 17, 2015.   Therefore, the first issue is whether the Plaintiffs' complaint states

9

sufficient facts to make it plausible that the alleged transfer occurred within one year prior to that date.   The Court concludes that it does.

The complaint states that Caron and the Debtor entered into their separation agreement in late 2014.  (Doc. No. 1, at ¶ 7).  It then asserts that sometime after they entered into their agreement, the Debtor sold "significant assets" of Laboratories (*Id.* at ¶ 11) and transferred the Sale Proceeds and the Converted Assets to USA Labs (*Id.* at ¶ 13).   According to the complaint, USA Labs was formed on April 13, 2015.   (*Id.* at ¶ 14).   Consequently, taking the allegations in the complaint as true, and making all inferences in favor of the Plaintiffs, it is plausible that the transfer occurred within one year prior to August 17, 2015.

### ii. The Debtor's Intent to Defraud

Section 727(a)(2) requires an "intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title."   11 U.S.C. § 727(a)(2).   Concerning this intent, the Plaintiffs allege that the Debtor transferred the assets to USA Labs as part of a scheme to conceal his interest in USA Labs and his conversion of the assets.  (Complaint, Doc. No. 1, at ¶ 19).  This allegation, though very basic, when viewed in the light most favorable to the Plaintiffs and with all inferences made in their favor, is sufficient to show an intent to hinder, delay, or

defraud creditors.

### iii. Ownership of the Property

A debtor's transfer of a company's assets, even if the debtor is an insider of the company, does not constitute a transfer of the *debtor's* property for purposes of § 727(a)(2). *See e.g.*, *Gebhardt v. McKeever (In re McKeever)*, 550 B.R. 623, 637 (Bankr. N.D. Ga. 2016) (Hagenau, J.) ("[A] debtor's transfer of corporate assets generally cannot result in denial of discharge under Section 727(a)(2)."); *see also MCorp Management Solutions, Inc. v. Thurman (In re Thurman)*, 901 F.2d 839, 841 (10th Cir. 1990) ("Congress intended to limit the reach of § 727(a)(2)(A) only to those transfers of property in which the debtor has a direct proprietary interest."); *Lort v. Ferguson Enters., Inc. (In re Lort)*, 347 B.R. 909, 910 (M.D. Fla. 2006) ("A corporation's property is not property of its shareholders, even where, as here, the corporation has only one shareholder."); *Cambridge Tempositions, Inc. v. Cassis (In re Cassis)*, 220 B.R. 979, 983 (Bankr. N.D. Iowa 1998) ("Technical, legal distinctions between corporations and shareholders will be respected in bankruptcy cases."). Therefore, the Debtor properly asserts in his motion that the sale and transfer of Laboratories's assets cannot constitute conduct sufficient to deny the Debtor a discharge.

11

However, the Plaintiffs maintain that the Debtor did transfer his property, not Laboratories's property, because he *converted* the Sale Proceeds and the Converted Assets to his own use (which the Plaintiffs conclude made them the Debtor's property) and then transferred them to USA Labs.   (*See* Complaint, Doc. No. 1, at ¶ 11).   Thus, their argument goes, the transfer of the Sale Proceeds and the Converted Assets to USA Labs was a transfer of the Debtor's property.

The Plaintiffs' argument, while admittedly clever, is unavailing.   The Plaintiffs have misapprehended what it means to "convert" property.   In their response to the Debtor's motion, the Plaintiffs define "conversion" as "the assumption and exercise of the right of ownership."   (Doc. No. 28, at 8).   However, this definition is too simple—it leaves out the critical element that conversion is a *wrongful* assumption and exercise of ownership.   *See Conversion*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("The wrongful possession or disposition of another's property as if it were one's own; an act or series of acts of willful interference, without lawful justification, with an item of property in a manner inconsistent with another's right, whereby the other person is deprived of the use and possession of the property."); *Conversion*, RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY (2d ed. 2001) ("unauthorized assumption and exercise of rights of ownership over

12

personal property *belonging to another*" (emphasis added)).    Considering that conversion denotes a *wrongful* taking in violation of the rights of ownership of a third party, the Court concludes that one who converts assets does not obtain title to those assets as a result of his conversion.   *C.f. First Nat'l Bank of Cartersville v. Hill*, 412 F. Supp. 422, 425 (N.D. Ga. 1976) ("It is a general rule of common law that no title is acquired by an embezzler, but that such title remains in the victim, who is the beneficial owner of a constructive trust which is imposed on such monies or on property purchased with such money.   This is also the rule in Georgia." (citations omitted)).

Indeed, Georgia law concerning the tort of conversion also reflects that title to converted property does not pass to the tortfeasor.    In Georgia, the tort of "conversion" contains five elements, two of which are (1) title (or right to immediate possession) *in the plaintiff*, and (2) actual possession in the defendant.   CHARLES R. ADAMS, III, GEORGIA LAW OF TORTS § 2:7 (December 2016 Update) (emphasis added); *see also In re McKeever*, 550 B.R. at 636 ("In general, unless a federal interest requires a different result, state law governs the determination of what legal or equitable interests a debtor holds in property.").    This implies that title to converted assets remains with the entity whose property was converted.

13

Here, because the complaint alleges that the Debtor "converted" the Sale Proceeds and the Converted Assets, it does not allege sufficient facts to show that the Sale Proceeds or the Converted Assets were property of the Debtor that the Trustee could recover and liquidate to pay creditors.  Because they were not his property, the Debtor did not violate § 727(a)(2) by transferring them to USA Labs, and the Plaintiffs' complaint fails to state a claim under § 727(a)(2).

*Count II: § 727(a)(4)*

Section 727(a)(4) denies a discharge to a debtor who "knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account." 11 U.S.C. § 727(a)(4).  A false oath or account may be an omission from the debtor's schedules or statement of financial affairs.  *See Shinhan Bank Am. (Inc.) v. Kim (In re Kim)*, 2011 WL 5902461, at *5 (Bankr. N.D. Ga. Oct. 27, 2011) (Sacca, J.).  A plaintiff must prove that the debtor acted with actual fraudulent intent in making the false oath or account, but this intent may be inferred from the circumstances.  *See E. Diversified Distributors, Inc. v. Matus (In re Matus)*, 303 B.R. 660, 676 (Bankr. N.D. Ga. 2004) (Mullins, J.).  Evidence of multiple omissions or misrepresentations is a strong indication of fraudulent intent.  *See Protos v. Silver (In re Protos)*, 322 F. App'x 930, 933 (11th Cir. 2009) (per curiam)

14

("While a single, isolated instance of non-disclosure or improper disclosure *may* not support a finding of fraudulent intent, we find that the repeated nature of the non-disclosures and improper disclosures made by the [debtor] in his schedules and [statement of financial affairs] supports the bankruptcy court's finding of fraudulent intent."); *In re Matus*, 303 B.R. at 679 ("The amended Schedules and Statement of Financial Affairs are replete with numerous significant omissions and riddled with inaccuracies, which are indicative of a pervasive pattern clearly warranting the conclusion that they were not due to mistake or oversight.").

In addition to being knowingly and fraudulently made, the false oath or account must address "a material matter."   *In re Matus*, 303 B.R. 660, 676; *accord Williams v. Williams (In re Williams)*, 2013 WL 6017464, at *6 (Bankr. M.D. Ga. Nov. 12, 2013).   Materiality is expansively defined: "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the [debtor's] business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."   *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984); *accord In re Williams*, 2013 WL 6017464, at *7; *In re Kim*, 2011 WL 5902461, at *6.   The rule encourages full disclosure by debtors; it is not for the debtor to decide whether

15

information will be relevant to creditors.  *See In re Kim*, 2011 WL 5902461, at *6 (quoting *Lincoln Savs. Bank v. Freese (In re Freese)*, 2011 WL 2604750, at *5 (Bankr. N.D. Iowa June 30, 2011)) ("Consequently, the debtor has an 'uncompromising duty to disclose' his or her financial information, not 'to pick and choose or to obfuscate the answers.'"); *In re Matus*, 303 B.R. at 675; *see also In re Chalik*, 748 F.2d at 618 ("The veracity of the [debtor's] statements is essential to the successful administration of the Bankruptcy Act.").  However, the omissions must constitute more than "harmless inaccuracies."  *Rainer v. Stump (In re Stump)*, 1996 Bankr. LEXIS 1920, at *11 (Bankr. N.D. Ga. Sept. 30, 1996).

In the instant proceeding, the complaint alleges four omissions from the Debtor's schedules and statement of financial affairs: (1) the failure to disclose personal receipt and use of the Sale Proceeds; (2) the failure to disclose personal receipt and use of the Converted Assets; (3) the failure to disclose the transfer of the Sale Proceeds and the Converted Assets to USA Labs; and (4) the failure to disclose the Debtor's true interest in USA Labs.   (Doc. No. 1, at ¶ 25).

In his motion, the Debtor argues that the Plaintiffs have failed to state a claim under § 727(a)(4) because their complaint fails to meet the heightened pleading standard for fraud contained in Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("In alleging

16

fraud or mistake, a party must state with particularlity the circumstances constituting the fraud or mistake."); *see also* Fed. R. Bankr. P. 7009.   The Debtor also contends that he had no duty to disclose the pre-petition transfer of property that was not his, and that the Plaintiffs have not alleged any facts that show the Debtor has any interest in USA Labs to disclose.   The Plaintiffs respond that their allegation that the Debtor created USA Labs to hide assets is sufficient, and that they allege that the Debtor has failed to disclose his receipt of the Sale Proceeds and the Converted Assets.

Concerning the failure to report the personal receipt and use of the Sale Proceeds and the Converted Assets, the Court has already concluded that the Plaintiffs' have not sufficiently pleaded that these assets belonged to the Debtor. While the scope of required disclosures is broad, the Debtor has no duty to disclose property in which he does not have an interest.   *See Smith v. Smith (In re Smith)*, 489 B.R. 875, 895 (Bankr. M.D. Ga. 2013) ("Property the debtor has no interest in does not meet [the materiality] standard."); *see also Moyer v. Geer (In re Geer)*, 522 B.R. 365, 387 (Bankr. N.D. Ga. 2014) (Hagenau, J.) ("[I]f the omission would not assist or impede the debtor or creditors in [investigating the debtor's affiars], it is not

17

material.").[2]    Thus, the failure to disclose his receipt of the Sale Proceeds and the Converted Assets does not constitute a false oath.

The same logic applies to the failure to disclose the transfer to USA Labs. The Sale Proceeds and the Converted Assets did not belong to the Debtor, and therefore, the Debtor's transfer of them did not need to be disclosed.

Concerning the Debtor's failure to disclose his interest in USA Labs, the Debtor rightly asserts that Rule 9(b), which requires "a plaintiff to plead…fraud with particularity," applies to this claim.  *See Peach State Bank & Trust v. Riddle (In re Riddle)*, 2015 WL 1038473, at *3 (Bankr. N.D. Ga. Mar. 2, 2015) (Ellis-Monro, J.). However, it has been held that "less particularity is required" in situations in which a party is making a § 727(a)(4) claim involving omissions from the Debtor's filings. *See id.* (citing *Smith v. Smith (In re Smith)*, 489 B.R. 875, 896-97 (Bankr. M.D. Ga. 2013)).

Here, the Plaintiffs have alleged that the Debtor has an interest in USA Labs that he intentionally failed to disclose in his schedules and statement of financial

---

[2]  The Court notes that the Debtor not having an interest in property is different than having an interest in property that has no value.   A debtor is not absolved of his duty to disclose just because he believes an asset has no worth.  *See In re Williams*, 2013 WL 6017464, at *7.

18

affairs.    Though the allegation does not go into detail concerning the specific nature of that interest,[3] the Court finds that it is sufficient to state a claim under § 727(a)(4). *See In re Matus*, 303 B.R. at 679 (denying discharge for, among other things, the debtor's failure to disclose ownership of a business).

*Count III: § 727(a)(5)*

Section 727(a)(5) acts to deny a discharge to a debtor who fails "to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."   11 U.S.C. § 727(a)(5).   A claim under this paragraph involves two stages of proof: first, the plaintiff has the burden of showing that the debtor had assets that are no longer available; second, the debtor must satisfactorily explain what happened to those assets.   *See Menotte v. Moore (In re Moore)*, 375 B.R. 696, 704 (Bankr. S.D. Fla. 2007); *Caterpillar Inc. v. Gonzalez (In re Gonzalez)*, 302 B.R. 745, 754-55 (Bankr.

---

[3] In his motion, the Debtor points to the Plaintiffs' allegation that Jeffrey Hendricks, MD, "is *the* member and manager" of USA Labs.   The use of the definite article indicates exclusivity, and therefore, the allegation implies that the Debtor is not a member of USA Labs.   However, a person need not be a member of a limited liability company to have an interest in it.   *See* O.C.G.A. § 14-11-502 (addressing the assignment of interests in a limited liability company); O.C.G.A. § 14-11-503(1) ("An assignee of a limited liability company interest may become a member only if the other members unanimously consent….").

S.D. Fla. 2003).

Here, the Debtor argues that the Sale Proceeds and the Converted Assets never belonged to him, so he is not required to account for their disposition. As stated above, the Court agrees that the Plaintiffs have failed to sufficiently plead that the Sale Proceeds and the Converted Assets were property of the Debtor, and thus the Court agrees that the Debtor is not under any obligation to account for their disposition. Consequently, the Plaintiffs have failed to state a claim under § 727(a)(5).

## Conclusion

In accordance with the foregoing, it is hereby **ORDERED** as set forth below.

The Debtor's Motion to Dismiss for Failure to State a Claim is **DENIED**.

The Debtor's Motion for Judgment on the Pleadings is **GRANTED IN PART AND DENIED IN PART**. Counts I and III of the Plaintiffs' complaint are **DISMISSED** in their entirety. Count II of the Plaintiffs' complaint is **DISMISSED** except to the extent that it claims the Debtor knowingly and fraudulently failed to disclose his interest in USA Labs.

The Clerk is **DIRECTED** to serve this Order on the Debtor, the Plaintiffs,

20

their respective counsel, the Chapter 7 Trustee, and the United States Trustee.

**END OF DOCUMENT**